IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CITY OF PHILADELPHIA, *Plaintiff,* v. HEMPSTEAD PROPERTIES, LLC, *Defendant.* | CIVIL ACTION NO. 23-2434 |

**Pappert, J.**                                                                                                                          April 15, 2024

**<u>MEMORANDUM</u>**

The City of Philadelphia sued Hempstead Properties in the Philadelphia County Court of Common Pleas, seeking at least $460,000 in damages stemming from alleged Philadelphia Building Construction and Occupancy Code violations that occurred at Hempstead's property. Hempstead removed the case and asserted counterclaims against the City and "John Does L&I Inspectors and Code Enforcers," claiming the City violated its procedural due process rights, committed an unlawful taking and imposed excessive fines. Hempstead also appears to allege the City and the John Does violated the Equal Protection Clause in selectively enforcing the building codes.

The City moved to dismiss Hempstead's counterclaims. Rather than substantively respond to the City's motion, Hempstead filed a motion to substitute a named defendant for one of the John Does. Because Hempstead fails to allege its counterclaims with sufficient factual specificity, the Court grants the City's motion but will allow Hempstead leave to amend to add named parties and correct the identified deficiencies.

1

I

Hempstead, a sole member, Black-owned LLC, purchased a property located at 2565 N. Bancroft St. for $28,500 in 2021.  (Answer and Am. Counterclaims, ECF No. 18, ¶ 57).  In 2023 and 2024, the property was assessed to be worth $52,900.  (*Id.* ¶ 59).

After Hempstead bought the property, the City brought code enforcement actions against it for missing windows and doors, violations that existed but were not cited under the previous, Caucasian owner.  (*Id.* ¶ 63).  In fact, Hempstead alleges that between 2006 and 2017, the City's Department of Licensing and Inspections cited the property for at least thirty-nine code violations, but never took legal action to compel the owner to correct those infractions.  (*Id.* ¶ 61).

Hempstead says it received notice of the violations, but the City provided no detailed instructions on how to cure them.  (*Id.* ¶ 65).  So Hempstead tried curing the violations by installing new windows and doors.  (*Id.*)  After it did so, the City fined Hempstead more than $465,000.  (*Id.* ¶ 67).  Hempstead says failure to pay the fine will result in a judgment and lien which ultimately will force it to sell the property.  (*Id.* ¶ 68).

Hempstead further alleges that Caucasian property owners and business owners, such as Matus Windows, routinely install windows and doors without permits and are not cited for violations.  (*Id.* ¶ 66).  Hempstead says "at least eight" Caucasian property owners in one block of the City's Germantown neighborhood have done so and have neither been cited nor fined.  (*Id.*)  Hempstead contends this is part of a "troubling custom, policy and practice" by the City and its Caucasian housing and licensing inspectors and code enforcers targeting Black property owners.  (*Id.* ¶ 69).

II

Courts evaluate a motion to dismiss a counterclaim under the same standard as a motion to dismiss a complaint. *See, e.g., Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 826 (3d Cir. 2011). To survive dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pled "allow[ ] the court to draw the reasonable inference that [a] defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but not shown, that the pleader is entitled to relief. *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

When the complaint includes well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679). However, this "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016). This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. (quoting *Connelly*, 809 F.3d at 786–87). Even if a party does not make a formal motion to dismiss, the Court may, on its own initiative, dismiss the complaint for failure to state

a claim where the inadequacy of the complaint is apparent as a matter of law. *See, e.g., Zaslow v. Coleman*, 103 F. Supp.3d 657, 664 (E.D. Pa. May 5, 2015).

III

Under Local Rule 7.1(c), motions may be granted as uncontested in the absence of a timely response. However, the Third Circuit Court of Appeals has cautioned that district courts may not grant a 12(b)(6) motion without first analyzing the motion on the merits and finding an independent legal basis for granting it. *Wiggins v. MacManiman*, 698 F. App'x 42, 43 (3d Cir. 2017) (quoting *Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991)). Hempstead did not substantively respond to the City's motion to dismiss, but the Court will evaluate the motion on the merits.[1]

IV

Hempstead asserts various constitutional claims against the City and John Does. These claims may be brought pursuant to 42 U.S.C. § 1983. However, a

---

[1] In deciding the City's motion, the Court considered the allegations made in Hempstead's amended answer and counterclaims, (ECF No. 18), because that is the document the City moved to dismiss. Though Hempstead sought to substitute Sherelle Alford for one of the John Does, (ECF No. 22), the City objected to that motion, contending Hempstead's counterclaims failed under 12(b)(6). *See* (ECF No. 25). To the extent Hempstead seeks to substitute Sherelle Alford for the John Does, (ECF No. 22), it may do so in its amended counterclaims.

Furthermore, Federal Rule of Civil Procedure 4(m) provides:

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m). Over ninety days has passed since Hempstead added the John Does to its counterclaims. (ECF No. 18). However, given that Hempstead has identified Sherelle Alford and a counterclaim summons has been issued, (ECF No. 24), the Court grants Hempstead an additional thirty days to serve Alford. *See, e.g., Blair v. Clark*, No. 07-307, 2009 WL 1066052, at *2 (D. Neb. Apr. 21, 2009).

municipality "cannot be liable under § 1983 on a respondeat superior theory." *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 694 (1978).  A successful *Monell* claim against the City must establish: (1) an underlying constitutional violation; (2) a policy or custom attributable to the municipality; and (3) that the constitutional violation was caused by the municipality's policy or custom.  *Wilson v. City of Phila.*, 177 F. Supp. 3d 885, 908 (E.D. Pa. 2016) (citing *Monell*, 436 U.S. at 658).  Without an underlying constitutional violation, there can be no *Monell* claim.  *Knellinger v. York Street Property Development, LP*, 57 F. Supp.3d 462, 471 (E.D. Pa. 2014).

V

First, Hempstead contends it was deprived it of its Fourteenth Amendment procedural due process rights because it did not receive adequate notice of the alleged housing code violations, a reasonable time to cure those violations, prompt pre-deprivation hearing, prompt post-deprivation hearing or a notice of appellate rights. (Answer and Am. Counterclaims, ECF No. 18, ¶¶ 71(a)–(b)).

For a plaintiff to state a claim for deprivation of procedural due process rights, it must allege that (1) it was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protections of life, liberty or property, and (2) the procedures available to it did not provide due process of law.  *Newman v. Beard*, 617 F.3d 775, 782–83 (3d Cir. 2010).  The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner."  *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).

Hempstead fails to plead a procedural due process claim.  Though Hempstead has a property interest in keepings its money, *Bell v. Township of Concord*, 759 F.

5

Supp.2d 621, 627–28 (E.D. Pa. 2011), Hempstead does not say what form of notice it received, the amount of time it was provided to cure the alleged violations or whether that notice included a reference to appellate rights. *See* (ECF No. 19, at 8). Relying on legal conclusions, Hempstead alleged neither facts regarding the procedures available to address the violations nor facts suggesting those procedures were constitutionally inadequate. *See Vurimindi v. City of Phila.,* 521 F. App'x 62, 65 (3d Cir. 2013) (noting a plaintiff must show, as part of his procedural due process claim, that the state procedure for challenging the alleged deprivation was "constitutionally inadequate").

## VI

Next, Hempstead claims the City, by seeking to impose a fine, has committed an unlawful taking of Hempstead's property. (Answer and Am. Counterclaims, ECF No. 18, ¶ 74(a)). "While a taking may occur when a specific fund of money is involved, the mere imposition of an obligation to pay money . . . does not give rise to a claim under the Takings Clause of the Fifth Amendment." *Scott v. Philadelphia Housing Authority*, No. 10-4723, 2011 WL 1791095, at *5 (E.D. Pa. May 11, 2011) (quoting *Commonwealth Edison Co. v. United States*, 271 F.3d 1327, 1340 (Fed. Cir. 2001)); *Silverwood Aviation, Inc. v. City of Hesperia*, No. 20-185, 2021 WL 4815009, at *3 (C.D. Cal. July 27, 2021); *Banks v. Cty. of San Mateo*, No. 16-04455, 2017 WL 3434113, at *13 (N.D. Cal. Aug. 10, 2017).

## VII

The Eighth Amendment's Excessive Fines Clause "restricts 'the Government's power to extract payments, whether in cash or in kind, as punishment for some offense.'" *United States v. Cheeseman*, 600 F.3d 270, 282 (3d Cir. 2010) (quoting *United*

*States. v. Bajakajian*, 524 U.S. 321, 328 (1998)). In assessing an excessive fine challenge, the Court engages in a "two-step inquiry: (1) whether a 'fine' is at issue—that is, whether the government, acting with punitive intent, has operated to 'extract a payment' in case or in kind from a citizen; and (2) if so, whether that fine is excessive, or grossly disproportionate to the gravity of the offense." *Dailey v. City of Philadelphia*, 819 F. App'x 71, 75 (3d Cir. 2020) (quoting *Bajakajian*, 524 U.S. at 328, 334) (cleaned up).

Hempstead falls well short of plausibly alleging the fine was excessive or grossly disproportionate to the gravity of the offense.[2] *Ke v. Phila. Parking Auth.*, 831 F. App'x 621, 623 (3d Cir. 2020) (citing *Bajakajian,* 524 U.S. at 334). Hempstead emphasizes the fine substantially exceeds the property's value and failure to pay it will result in a forced sale. (Answer and Am. Counterclaims, ECF No. 18, ¶¶ 68, 78). But allegations based on a plaintiff's inability to pay are insufficient to state a claim under the Eighth Amendment's Excessive Fines Clause. *See Singh v. Droppa*, No. 20-1317, 2024 WL 726643, at *3 (D.N.J. Feb. 22, 2024). Without facts alleging the fine is disproportionate to the code violations, the Court has no reason to find the fine constitutionally impermissible. *See id.*

---

[2] The City argues this claim is not ripe because no fine has been imposed by a court. (Mot. To Dismiss, ECF No. 19, at 11). A case is typically ripe if a plaintiff shows that it has suffered an injury-in-fact because the threat of enforcement is "sufficiently imminent." *Stevens v. City of Columbus*, No. 21-3755, 2022 WL 2966396, at *11 (6th Cir. July 27, 2022) (quoting *Platt v. Bd. of Comm'rs on Grievances & Discipline of Ohio Sup. Ct.*, 769 F.3d 447, 451 (6th Cir. 2014)). "Eighth Amendment challenges are generally not ripe until the imposition, or immediately impending imposition, of a challenged punishment or fine." *Cheffer v. Reno*, 55 F.3d 1517, 1523 (11th Cir. 1995). Here, the City commenced enforcement proceedings and Hempstead faces an "immediately impending" fine. *See Stevens*, 2022 WL 2966396, at *12 (noting that if a city chose to seek fines for failure to abide by city code, plaintiffs would have a ripe excessive fines challenge).

VIII

Though not alleged specifically as a counterclaim, Hempstead contends it was "denied . . . equal protection." (Answer and Am. Counterclaims, ECF No. 18, ¶ 74(b)). The City argued the issue in its motion to dismiss, (Mot. To Dismiss, ECF No. 19, 10–11), and the Court will also evaluate it. *See, e.g., Redley v. Whole Foods Market Group, Inc.*, No. 19-2908, 2021 WL 723274, at *11 (E.D. Pa. Feb. 24, 2021).

A

The Equal Protection Clause prohibits "selective discriminatory enforcement" of a facially valid law. *PG Pub. Co. v. Aichele*, 705 F.3d 91, 115 (3d Cir. 2013). To establish a selective enforcement claim,[3] a plaintiff must show (1) that it was treated differently from another, similarly situated entity, and (2) that this selective treatment was based on an unjustifiable standard, such as race. *Dique v. N.J. State Police*, 603 F.3d 181, 184 n.5 (3d Cir. 2010). Persons or parties are "similarly situated" for equal protection purposes when they are "alike in all relevant respects." *Startzell v. City of Phila.*, 533 F.3d 183, 203 (3d Cir. 2008). Plaintiffs must not only show an unequal application of the law, but also an element of intentional or purposeful discrimination. *PG Pub. Co.*, 705 F.3d at 115.

Hempstead, a sole member, Black-owned LLC, says it was treated differently when it was cited for violations such as the missing windows and doors that the previous, Caucasian owner of the property was not. (Answer and Am. Counterclaims, ECF No. 18, ¶ 63). Furthermore, it alleges that at least eight Caucasian property

---

[3]   Because Hempstead did not explicitly assert its equal protection claim, it is unclear if it intended to proceed under a selective enforcement theory. In its amended counterclaims, Hempstead should make clear the theory upon which it relies.

8

owners in Germantown have had windows and doors installed by Matus Windows without building permits but have not been fined for the failure to acquire the permits. (*Id.* ¶ 66). At this early stage and accepting all factual allegations as true, Hempstead sufficiently alleges an equal protection claim. *See Hamilton v. Radnor Township*, 502 F. Supp.3d 978, 989 (E.D. Pa. 2020) (denying defendants' motion to dismiss where African American plaintiff alleged that she, but not her similarly situated white neighbors who also committed housing code violations, was evicted and subject to threats of additional penalties).

B

Nevertheless, Hempstead's claim hinges on whether it can show the equal protection deprivation was caused by a City policy or custom, as an action cannot be maintained solely against John Does. *See, e.g., Hindes v. F.D.I.C.*, 137 F.3d 148, 155 (3d Cir. 1998). Hempstead fails to do so.

To plead a claim against the City, "a plaintiff must allege that 'a [local] government's policy or custom . . . inflict[ed] the injury' in question." *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Monell*, 436 U.S. at 694). A policy is made when a decisionmaker possessing final authority issues an official proclamation, policy or edit. *Id.* Custom can be shown through a given course of conduct, which though not endorsed or authorized by law, is so well-settled and permanent as to virtually constitute law. *Id.* Further, a plaintiff must allege the policy or custom was the proximate cause of its injuries. *Id.*

Hempstead alleges it discovered a "troubling custom, policy and practice" by the City of targeting Black property owners, as set forth in complaints and appeals filed in

the Superior Court of Pennsylvania. (Answer and Am. Counterclaims, ECF No. 18, ¶ 69). However, Hempstead does not elaborate on those cases, provide citations or say when they occurred.

Hempstead also points to one block in Germantown as evidence of a widespread custom of selective enforcement. (*Id.* ¶ 66). There is "no set number of incidents that make a practice widespread." *McLennon v. City of New York*, 171 F. Supp.3d 69, 95 (E.D.N.Y. 2016). But courts have found instances where plaintiffs cite even a "handful" of examples—particularly in a large city—insufficient to plead a custom of violating constitutional rights. *Id.* (dismissing plaintiff's *Monell* claim because it was based on a "handful of decisions" involving a certain group of officers from one police unit); *Cruz v. City of New York,* No. 15-2265*,* 2016 WL 234853, at *5 (S.D.N.Y. Jan. 19, 2016) (dismissing plaintiff's *Monell* claim based on widespread custom because eight cases cited in a large city like New York was "particularly inadequate to demonstrate plausibly a municipal custom"). Hempstead has similarly failed to allege a well-settled custom of the City violating the Equal Protection Clause by selectively enforcing the building codes.

Furthermore, Hempstead has not alleged that a decisionmaker with final authority to establish municipal policy with respect to the actions ordered made any such decision. *Andrews v. City of Phila.,* 895 F.2d 1469, 1481 (3d Cir. 1990). Nor can Hempstead support its *Monell* claim through a failure to train theory, because Hempstead's conclusory assertions fail to identify specific instances of prior misconduct caused by inadequate training. *See Kelty v. City of Philadelphia*, No. 16-306, 2016 WL 8716437, at *5 (E.D. Pa. June 10, 2016). Without more, Hempstead's allegations

amount to nothing more than a naked assertion that it suffered harm at the hands of the City, and such bald accusations are insufficient to state a plausible claim for relief.[4]

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.

---

[4] An action cannot be maintained solely against John Does. *See, e.g., Hindes*, 137 F.3d at 155. As there are only John Does remaining in the case, Hempstead's equal protection claim is dismissed.